## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JEAN STOCKLEY, BRIANNA WILLIAMS, ELIZEBETH BURNS and LORETTA MUNFORD, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiffs | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| NISSAN NORTH AMERICA, INC, and NISSAN MOTOR CO., LDT. | |
| Defendants | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Jean Stockley, Brianna Williams, Elizabeth Burns, and Loretta Munford ("Plaintiffs") bring this action against Nissan of North America, Inc. and Nissan Motor Co., Ltd. ("Defendants" or "Nissan"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

### I.     INTRODUCTION

1.     Plaintiffs bring this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased any 2019 through 2020 Nissan Rogue vehicle in the United States ("Class Vehicles") that was designed, manufactured, distributed, marketed, sold or leased by Defendants.

2.     Beginning in 2018, if not before, Defendants knew that the Class Vehicles contain one or more design and/or manufacturing defects that can cause their continuously variable transmission ("CVT") to malfunction ("CVT Defect").   A "CVT" is a type of automatic transmission that does not use conventional gears to achieve the various ratios required during normal driving.   Instead, it uses a segmented steel belt between pulleys that can be adjusted to change the reduction ratio in the transmission.   This is supposed to occur smoothly and continuously.   Like a conventional transmission, a CVT is electronically controlled by a Transmission Control Module ("TCM").

3.      Numerous Class Vehicle owners have reported a significant delay in their Class Vehicle's response while attempting to accelerate from both from a stop and while in motion. This delay in response is often accompanied by the engine revving while the driver depresses the gas pedal without little to no increase in vehicle speed.  Class Vehicle owners have also experienced and reported stalling, jerking, lurching, juddering, and/or shaking while operating their Class Vehicles, as well as premature transmission failure.

4.       The CVT Defect has been documented to occur without warning during vehicle operation and poses an extreme and unreasonable safety hazard to drivers, passengers and pedestrians for obvious reasons.  These safety hazards include being unable to maintain the proper speed to integrate seamlessly into the flow of traffic, especially on highways or freeways, putting drivers at risk of being rear ended or otherwise causing an accident unless they pull off the road.

5.      In addition to these obvious safety hazards, the cost to repair the CVT Defect can be exorbitant.  The Class Vehicles thus differ materially from the product Nissan intended to sell.  Nissan intended to produce vehicles with CVTs that shift smoothly and continuously. Instead, Nissan produced vehicles that do not accelerate when prompted to accelerate, and that shake, shudder, jerk and judder.

6.      Plaintiffs are informed and believe, and based thereon allege, that Defendants knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter. Defendants have actively concealed the true nature and extent of the CVT Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter.  Had Plaintiffs and prospective Class Members known about the CVT Defect, they would not have purchased the Class Vehicles or would have paid less for them.

7.      Plaintiffs are informed and believe, and based thereon allege, that despite notice of the CVT Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, dealership repair orders and prior experience with earlier model vehicles with the same or substantially similar CVTs, Defendants have not

recalled the Class Vehicles to repair the CVT Defect, have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the CVT Defect.

8.      Plaintiffs are further informed and believe, and based thereon allege, that despite being on notice of the CVT Defect, Defendants regularly deny the existence of the CVT Defect until after consumers' five (5) years/60,000 miles New Vehicle Limited Warranty Powertrain Coverage ("Powertrain Warranty") has expired or require payment to repair the CVT Defect even while the Class Vehicles are under warranty.

9.      Nissan knew of and concealed the CVT Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale or lease and thereafter. As a result of their reliance on Defendants' omissions, owners and lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

## II.    PARTIES

### A.    Plaintiffs

#### Jean Stockley (Maryland)

10.      Plaintiff Jean Stockley is a Maryland citizen who lives in Windsor Mills, Maryland.  Ms. Stockley purchased a used 2019 Nissan Rogue from Antwerp Nissan-Security in Baltimore, Maryland in or around July 2021.  Prior to purchase, Mr. Stockley spoke with the dealer sales representative about the vehicle, inspected the window sticker posted on the vehicle and test drove the vehicle.  Ms. Stockley was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle.  Had Ms. Stockley been informed that her vehicle suffered from the CVT Defect, she would not have purchased it.  Ms. Stockley purchased her vehicle primarily

for personal, family or household purposes. Ms. Stockley's vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Nissan.

11.     Ms. Stockley's vehicle has exhibited the CVT Defect on numerous occasions. For example, when attempting to accelerate from a stop the vehicle hesitates, and then when it does engage, jerks into motion.

12.     At all times, Ms. Stockley has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### Brianna Williams (Tennessee)

13.     Plaintiff Brianna Williams is a Virginia citizen who lives in Duffield, Virginia. Ms. Williams purchased a new 2020 Nissan Rogue from Wallace Nissan of Kingsport, in Kingsport, Tennessee in or around December 2019. Prior to purchase, Ms. Williams spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Nissan on the vehicle and test drove the vehicle. Ms. Williams was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle. Had Ms. Williams been informed that her vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Williams purchased her vehicle primarily for personal, family or household purposes. Ms. Williams' vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

14.     Ms. Williams' vehicle exhibits the CVT Defect regularly. For example, when attempting to accelerate from a stop, Ms. Williams' vehicle hesitates. When attempting to pass other cars while cruising on the highway, the vehicle will jerk before accelerating. When driving on an incline, the vehicle will lose power and begin to slow down.

15.     At all times, Ms. Williams has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### Elizabeth Burns (North Carolina)

16.     Plaintiff Elizabeth Burns is a Virginia citizen who lives in Alberta, Virginia. Ms. Burns purchased a new 2020 Nissan Rogue from Renaissance Nissan in Roanoke Rapids, North Carolina in on or around December 2020. Prior to purchase, Ms. Burns spoke with the

sales representative about the vehicle, inspected the Monroney sticker posted on the vehicle by Nissan and test drove the vehicle. Ms. Burns was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle. Had Ms. Burns been informed that the vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Burns purchased her vehicle primarily for personal, family or household purposes. Ms. Burns' vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

17. Ms. Burns has experienced the CVT defect on multiple occasions. On several occasions, Ms. Burns' vehicle has lost power at random on the highway and then kicked back into gear. In addition, Ms. Burns sometimes hears a roaring sound while driving when she steps on the gas. Ms. Burns also experiences hesitation taking off from a stop.

18. At all times, Ms. Burns has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### Loretta Munford (Massachusetts)

19. Plaintiff Loretta Munford is a Massachusetts citizen who lives in Chicopee, Massachusetts. Ms. Munford purchased a new 2019 Nissan Rogue on or around February 2019 from Curry Nissan in Chicopee, Massachusetts. Prior to purchase, Ms. Munford spoke with the sales representative about the vehicle, inspected the Monroney sticker posted on the vehicle by Nissan and test drove the vehicle. Ms. Munford was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle. Had Ms. Munford been informed that her vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Munford purchased her vehicle primarily for personal, family or household purposes. Ms. Munford's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

20. Ms. Munford began experiencing the CVT Defect approximately one month after her February 2019 purchase. She first noticed that the vehicle was slipping, and then it began hesitating and jerking during acceleration. In April 2019, Ms. Munford brought her

vehicle to Curry Nissan because of the problems she was experiencing but the service technician claimed it was operating normally.

21. At all times, Ms. Munford has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**B.** **Defendants**

**Nissan North America, Inc.**

22. Defendant Nissan North America, Inc. ("NNA") is a Delaware corporation with its principal place of business located at One Nissan Way, Franklin, Tennessee 37067 and doing business in Tennessee and throughout the United States.

**Nissan Motor Co., Ltd.**

23. Founded in 1933 and headquartered in Yokohama, Japan, Defendant Nissan Motor Co., Ltd. ("NML") is a corporation organized under the laws of Japan. NML manufactures and distributes automobiles and related parts. It also provides financing services. NML delivers a comprehensive range of products under various brands that are manufactured in Japan, the United States, Mexico, the United Kingdom and other countries. NML is the parent and 100% owner of NNA.

24. At all relevant times, NNA and NML were engaged in the business of designing, manufacturing, marketing, distributing, and selling automobiles, including but not limited to the Class Vehicles, and other motor vehicles and motor vehicle components, in Tennessee and throughout the United States.

25. Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

### III. JURISDICTION

26.     This is a class action.

27.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.  This court also has federal question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims under the Magnuson-Moss Act arise under federal law.  This Court has personal jurisdiction over NNA because its principal place of business is in Franklin, Tennessee, and Defendants' otherwise have sufficient minimum contacts with Tennessee, and/or otherwise intentionally avails themselves of the markets within Tennessee, through the promotion, sale, marketing and distribution of their vehicles in Tennessee, so as to render the exercise of jurisdiction by this Court proper and necessary.

### IV. VENUE

28.     Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within the Middle District of Tennessee.

### V. NISSAN'S KNOWLEDGE OF THE CVT DEFECT

29.     For years, Nissan has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Upon information and belief, Defendants have sold, directly or indirectly through dealers and other retail outlets, many thousands of Class Vehicles nationwide.

30.     Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Nissan and its dealerships; specifically, they are the intended beneficiaries of Nissan's warranties.  The dealerships were not intended to be the ultimate consumers of the Class Vehicles, and the warranty agreements were designed for and intended to benefit the ultimate consumers only.

31.     The CVT Defect causes the Class Vehicles' to unexpectedly malfunction by hesitating, stalling, jerking, lurching, revving, shaking, juddering and/or failing prematurely. The CVT Defect presents a safety hazard that renders the Class Vehicles unreasonably

dangerous to consumers due to, *inter alia*, the impact of the Defect on driver's ability operate the Class Vehicle as expected.

32.    Plaintiffs are informed and believe, and based thereon allege, that, prior to placing the Class Vehicles in the stream of commerce, Nissan became aware of the CVT Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Nissan's network of dealers and directly to Nissan, aggregate warranty data compiled from Nissan's network of dealers, testing conducted by Nissan in response to consumer complaints, and repair order and parts data received by Nissan from Nissan's network of dealers.  On information and belief, Nissan actively monitors and records consumer complaints made to Nissan's network of dealers as well as all service and repair work done related to the CVT Defect at its network of dealers

33.    Nissan's CVT has been plagued with the same or similar recurrent problems (i.e., hesitation, shaking, juddering, premature failure, etc.) for over a decade.  In 2009 Nissan voluntarily doubled the powertrain warranty coverage of 5 years/60,000 miles to 10 years/120,000 miles for a large part of its fleet, including the 2003-2010 Murano; 2007-2010 Versa SL; 2007-2010 Sentra; 2007-2010 Altima; 2007-2010 Maxima; 2008-2010 Rogue; and 2009-2010 Cube.[1]  Nissan also reported that "in the unlikely event that your vehicle's transmission should need repair beyond the extended warranty period we are working to decrease the cost of repair."[2]

34.    Nissan continued to experience such trouble with its CVTs that in December 2013 Nissan's then-CEO, Carlos Ghosn, announced that Nissan would increase its oversight

---

[1]        Frequently        Asked        Questions,        available        at
https://web.archive.org/web/20100323050249/http://www.nissanassist.com/faqs.php?menu=3 (last visited Sep. 12, 2022.

[2]    *See* Customer Satisfaction Program, CVT Program Details available at https://web.archive.org/web/20100124032242/http://www.nissanassist.com/ProgramDetails.php?menu=2 (last visited Sep. 12, 2022).

of CVT supplier JATCO, Ltd.[3]  Nissan further explained that it was necessary to increase its oversight of JATCO because continued customer service issues had begun to cut into Nissan's profits.[4]  However, Nissan's vehicles continued to be plagued with CVT issues thereafter.

35.     Technical Service Bulletins ("TSBs") issued by Nissan to its dealers, and other remedial actions it has taken concerning the Class Vehicles and other vehicles with the same or substantially similar CVT, evidence Nissan's knowledge of the CVT Defect.

36.     On information and belief, the 2019-2020 Nissan Rogue has a the same or substantially similar transmission as earlier model Nissan vehicles equipped with a CVT, including, but not limited to, the 2014-2018 Nissan Rogue.  Nissan recently extended the 2014-2018 Rogue Powertrain Warranty from five years/60,000 miles to seven years/84,000 miles and offered to reimburse owners and lessees who paid for transmission-related repairs during the extended warranty period in connection with a class action settlement.  *See Stringer, et al. v. Nissan North America, Inc.*, Case No. 3:21-cv-00099 (M.D. Tenn.) (finally approved March 23, 2022).  It has offered no such relief to 2019-2020 Rogue owners and lessees.

37.     At least as early as November 8, 2018, Nissan was already replacing CVTs and related components in 2019 Nissan Rogue vehicles as evidenced by TSB NTB12-103f, applicable to the 2019 Rogue and other CVT-equipped vehicles, which sets forth a procedure for calibrating the transmission control module after a CVT or transmission control module replacement is performed.

38.     On March 20, 2019, Nissan issued TSB NTB18-055b applicable to the 2019 Rogue and other CVT-equipped vehicles, which sets forth a service procedure for checking a CVT fluid quick level check.  This TSB indicates each dealer has been shipped two special tools to perform a CVT fluid check, a CVT Charge Pipe Cap Release, and a CVT Oil Level Quick Check Gauge, a specialized type of "dipstick" which allows for exact measurement of

---

[3]     Nissan Presses Jatco to end CVT glitches, Automotive News https://www.autonews.com/article/20131202/OEM10/312029972/nissan-presses-jatco-to-end-cvt-glitches (Dec. 2, 2013).

[4] *Id.*

transmission fluid level. On information and belief, it was necessary for Nissan to provide its dealers with these special tools because its CVTs are prone to leaking transmission fluid and their performance is extremely sensitive to the level of fluid present. Insufficient transmission fluid can cause belt slippage and, ultimately, transmission failure. On information and belief, transmission fluid is supposed to last all or a substantial portion of the life of a vehicle and not require this type of special monitoring.

39. On October 31, 2019, Nissan issued TSB NTB15-013e, applicable to the 2014-2020 Rogue among other CVT-equipped vehicles which cautions:

> **IMPORTANT**: Metal debris and friction material may become trapped in the radiator, cooling hoses, bypass valve or external CVT fluid cooler. This debris can contaminate the newly serviced transmission, control valve or torque convertor. In severe cases this debris can block or restrict flow and may cause damage to the newly serviced CVT.

This TSB goes on to advise technicians that when a CVT, control valve or torque convertor replacement is necessary the transmission fluid coolers must be flushed. Notably, the first version of this TSB was released on March 12, 2015. Thus, Nissan was aware of this issue afflicting its CVT years before release of the Class Vehicles.

40. On October 13, 2020, Nissan released TSB NTB19-076a, applicable to the 2018-2019 Rogue, which contains a repair flowchart that tells technicians what repair to perform depending on the symptoms exhibited and the Diagnostic Trouble Codes ("DTC") stored. This TSB indicates that if DTC P17F0 (a code associated with CVT "judder') is stored that the transmission sub-assembly should be replaced. This TSB similarly prescribes replacement of the transmission sub-assembly if there is evidence of CVT belt slippage. Notably, the first version of this TSB was issued on October 8, 2019. TSBs concerning CVT judder referencing DTC P17F0 date back many years before that, prescribing service procedures for earlier model Nissan CVT-equipped vehicles. *See, e.g*., TSB NTB15-084b dated April 1, 2016 and applicable to the 2014-2016 Rogue. Thus, Nissan was aware of this issue as well years before release of the Class Vehicles.

41. Nissan has continued to issue TSBs addressing Class Vehicle CVT issues.

42.     On information and belief, Defendants issued the above TSBs to address problems being caused by the CVT Defect.  Defendants had and have a duty to disclose the CVT Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Defendants had and have exclusive knowledge and/or access to material facts about the Class Vehicles and their CVTs that were and are not known to or reasonably discoverable by Plaintiffs and other Class Members; and, because Defendants have actively concealed the CVT Defect from their customers.  Further, because the none of the above TSBs were issued as part of a formal recall, they were much more likely to be overlooked by dealers, and unknown to consumers.[5]

## V.     EXAMPLE CONSUMER COMPLAINTS

43.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the CVT Defect.

44.     Nissan monitors consumer complaints made to the National Highway Traffic Safety Administration ("NHTSA"). Federal law requires automakers like Nissan to be in close contact with the NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to the NHTSA, including field reports, customer complaints, and warranty data. *See* Transportation Recall Enhancement, Accountability and Documentation ("TREAD") Act, Pub. L. No. 106-414, 114 Stat.1800 (Nov. 1, 2000).

45.     Automakers have a legal obligation to identify and report emerging safety-related defects to the NHTSA under the TREAD Act's Early Warning Report requirements. *Id.* Similarly, automakers monitor the NHTSA database for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Nissan knew or should have known of

---

[5] When a vehicle identification number is entered into a dealer computer, the dealer is automatically instructed to perform applicable recalls.  Dealers generally search for TSBs based on customer complaints, which requires them to often sift through multiple TSBs and attempt to interpret which, if any, are applicable.

the many complaints about the CVT Defect logged by the NHTSA Office of Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, Nissan to the CVT Defect.

46.     The following example complaints filed by consumers with the NHTSA and which continue to accrue demonstrate that the CVT Defect is a widespread, dangerous and unresolved problem that has continued with Nissan CVT-equipped vehicles through time unabated from one model year to the next[6]:

**2014 Nissan Rogue**

**NHTSA ID:10870850 Incident Date May 17, 2016:** NISSAN IS COVERING-UP A VERY SERIOUS AND ON-GOING PROBLEM WITH ITS CVT TRANSMISSION. I BOUGHT A 2014 NISSAN ROGUE NEW IN MAY 2014. THE VEHICLE NOW HAS 70,700 MILES ON IT. AFTER ONLY 24 MONTHS, THE CVT TRANSMISSION FAILED AND, ACCORDING TO THE LOCAL NISSAN DEALERSHIPS, I NEED A NEW TRANSMISSION AT A COST OF $4,000. THE NISSAN DEALERSHIP IMPLIED (BUT WOULD NOT STATE DIRECTLY) THAT THERE IS A PROBLEM WITH NISSAN'S CVT TRANSMISSION WHICH HAS BEEN ON-GOING FOR 10+ YEARS. HOWEVER, MY CAR IS OUT OF WARRANTY AND I MUST PAY FOR THE NEW TRANSMISSION. THE TRANSMISSION SHOULD NOT FAIL AFTER 24 MONTHS. NISSAN SHOULD ADDRESS THE SYSTEMIC PROBLEM WITH ITS CVT TRANSMISSIONS AND EXTEND ITS WARRANTY FOR CVT TRANSMISSIONS AS IT DID IN 2010 FOR NISSAN VEHICLES IN MODEL YEARS 2003 TO 2010.

**NHTSA ID:10672112 Incident Date January 13, 2015:** MY CAR STARTED TO REV TO OVER 4000 RPMS AT 30 MPH IT WAS LIKE IT WAS STOCK IN LOW FOR OVER 3 MILES I HAD TO PULL OVER STOP THE CAR AND TRY IT AGAIN I WAS UNABLE TO GET IT TO RUN NORMAL I TOOK IT RIGHT TO NISSAN SERVICE THEY CHECKED THE CAR OUT TOLD ME NOTHING WAS WRONG WITH IT. THEY ASKED ME IF I HAD IT IN LOW I TOLD HIM THAT A BIG D WAS SHOWING SO IT WAS IN DRIVE AND I WAS TOLD THEY SEE THAT AT ABOUT 40,000 MILES THEY WOULD NOT GIVE AND PAPER WORK FOR THE SERVICE THAT WAS DONE IF ANY. THERE IS PROBLEM WITH THE TRANSMISSION THIS IS THE 2ND TIME IT HAPPENED TO ME BUT IT CLEARED UP AFTER A LITTLE.

**NHTSA ID:10668154 Incident Date December 6, 2014:** TL* THE CONTACT OWNS A 2015 NISSAN ROGUE. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 10 MPH FROM A STOP SIGN, THE ENGINE BEGAN TO REV AND THE VEHICLE FAILED TO ACCELERATE OVER 10 MPH. IN ADDITION, THE VEHICLE STALLED. THE VEHICLE WAS RESTARTED BUT FAILED TO DRIVE OR REVERSE. THE VEHICLE WAS TOWED TO THE DEALER, WHO DIAGNOSED THAT

---

[6] Spelling and grammatical mistakes reproduced as in the original.

THE TRANSMISSION NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE VIN WAS UNAVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 500.

**2015 Nissan Rogue**

**NHTSA ID:11044480 Incident Date September 28, 2017:** AFTER DRIVING IN CITY TRAFFIC ALL DAY THE ROGUE WOULD NOT MOVE AS I WAS HEADING HOME FOR THE DAY. I BOUGHT THE ROGUE NEW IN 2015 AND IN OCTOBER 2016 THIS HAPPENED. TOOK TO A DEALERSHIP AND WORK WAS DONE. CAR OK UNTIL:

SEPTEMBER 2017 THE ROGUE WAS SHIFTING LATE AND NOT DOWN SHIFTING GOING DOWNHILL. TOOK IT BACK TO DEALERSHIP. NISSAN SAID JUST TO DRAIN SOME OF THE TRANSMISSION FLUID AND PUT IN NEW TRANSMISSION FLUID.

**NHTSA ID:11000299 Incident Date June 5, 2017:** WHEN THE TEMPERATURE IS OVER 90 DEGREES AND THE CAR HAS BEEN RUNNING FOR AT LEAST 10 MINUTES THE CAR HAS ACCELERATION ISSUES. WHEN AT A FULL STANDSTILL SUCH AS AT A STOPLIGHT THE CAR WILL NOT ACCELERATE QUICKLY AND RESPOND TO PEDAL PRESSURE. WHEN THE PEDAL IS FLOORED AND TRYING TO START AGAIN IT HAS A LONG DELAY LIKE THE TRANSMISSION IS IN A HIGH GEAR OR IS OVERHEATED. I KNOW THERE HAVE BEEN MANY ISSUES ONLINE ABOUT THE CVT OF THE ROGUE. THIS ONLY SEEMS TO HAPPEN WHEN IT IS HOT OUT. THERE ARE ALSO ISSUES WHEN GOING UP AN INCLINE IN HOT TEMPERATURE THE CAR DOES NOT RESPOND TO PEDAL PRESSURE AND ACCELERATION. THIS IS A SAFETY ISSUE IN THAT WHEN TRYING TO TURN LEFT AT A LIGHT I EXPECT MY CAR TO GO AND NOT STUTTER AND THERE HAVE BEEN MANY CLOSE CALLS TO BEING BROADSIDED.

**NHTSA ID:10920174 Incident Date August 15, 2016:** TL* THE CONTACT OWNS A 2015 NISSAN ROGUE. AFTER APPLYING THE BRAKES ABRUPTLY TO AVOID A COLLISION AND ATTEMPTING TO ACCELERATE, THE VEHICLE LOST POWER. IN ADDITION, THE ACCELERATOR PEDAL WAS DEPRESSED, BUT THE VEHICLE FAILED TO ACCELERATE AND INCREASED IN RPMS. THE FAILURE RECURRED ON NUMEROUS OCCASIONS. THE VEHICLE WAS TAKEN TO A DEALER WHO WAS UNABLE TO DIAGNOSE OR REPAIR THE VEHICLE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 7,000. UPDATED 01/11/2017*CT

**2016 Nissan Rogue**

**NHTSA ID:11118369 Incident Date August 7, 2018:** TL* THE CONTACT OWNS A 016 NISSAN ROGUE. WHILE DRIVING 65 MPH, THE TRANSMISSION FAILED. UPON DEPRESSING THE ACCELERATOR PEDAL, A LOUD DRAGGING NOISE WAS HEARD. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHO DIAGNOSED THAT THE CVT WAS FAULTY. A DEALER AND THE

MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 69,000.

**NHTSA ID:11063774 Incident Date September 11, 2017:** TL* THE CONTACT LEASED A 2016 NISSAN ROGUE. THE DRIVER STATED THAT THE TRANSMISSION FAILED TO FUNCTION PROPERLY. AN INDEPENDENT MECHANIC DETERMINED THAT THE VEHICLE WAS NOT SAFE TO DRIVE AND SUGGESTED THAT IT BE SERVICED BY THE DEALER WHO SOLD THE VEHICLE. THE CONTACT STATED THAT THE VEHICLE HESITATED AND THE GEARS WERE DIFFICULT TO SHIFT. THE VEHICLE WAS TAKEN TO THE DEALER (HILLTOP NISSAN, 258 NJ-10, EAST HANOVER, NJ 07936, (973) 887-5400) WHERE THE TRANSMISSION WAS REPLACED TWICE, BUT INDICATED THAT IT NEEDED TO BE REPLACED A THIRD TIME. THE DEALER WAS UNCERTAIN IF THEY COULD OFFER A LOANER VEHICLE UNTIL THE FAILURE WAS REMEDIED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 45,000.

**NHTSA ID:11063166 Incident Date November 2, 2017:** AS I WAS TRAVELLING ON A MAJOR FREEWAY, MY BRAND NEW 2016 NISSAN ROGUE BEGAN TO FEEL LIKE IT WAS "JUMPING." AT THAT POINT I NOTICED MY RPMS WERE HIGH FOR THE SPEED I WAS GOING. NOT EVEN 30 SECONDS AFTER, MY CAR COMPLETELY STALLED. I WAS IN THE FAST LANE OF THE FREEWAY AND BARELY HAD TIME TO REACT. I ENDED UP STUCK ON THE MEDIAN OF THE FREEWAY. I ENDED UP HAVING THE CAR TAKEN TO THE DEALER DOWN THE ROAD. THEY SAID THEY COULDN'T FIND ANYTHING WRONG WITH IT. I REFUSED TO DRIVE IT AND BEGAN SEEKING FURTHER HELP THROUGH NISSAN CONSUMER AFFAIRS. AFTER NEARLY A MONTH, AN ENGINEER FROM NISSAN TOOK 5 MINUTES TO LOOK AT IT AND NOTICED THE TRANSMISSION WAS SLIPPING. THE PREVIOUS WEEK BEFORE THIS MAJOR INCIDENT, THE CAR IS STALLED A FEW BLOCKS FROM MY HOME ON A RESIDENTIAL STREET AFTER ACCELERATING FROM A COMPLETE STOP. THE DEALERSHIP HAD TOLD ME THERE WAS NOTHING WRONG WITH IT AND IT WAS SAFE TO DRIVE. NOW HERE WE ARE 2 MONTHS LATER, AND IT FEELS AS IF THE TRANSMISSION IS SLIPPING AGAIN.

**NHTSA ID:10955290 Incident Date January 27, 2017:** TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. WHILE DRIVING 20-40 MPH, THE VEHICLE EXPERIENCED MODERATE CONSTANT VIBRATION WITHOUT WARNING. THE DEALER DIAGNOSED THAT THE VEHICLE RAN AS INTENDED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 500....UPDATED 05/17/17 *BF

**NHTSA ID:10955053 Incident Date January 27, 2017:** A NISSAN DEALER HAD PREFORMED A SERVICE CAMPAIGN PC4900 TO MY 2016 NISSAN ROGUE IT INVOLVED THE CVT TRANSMISSION SOFTWARE AND SINCE THEY DID IT THE CAR IS NOT DRIVING LIKE BEFORE. THE SHIFTING IS SLOWER AND TAKES LONGER TO SHIFT, THE ENGINE IS LOUDER AND REVVING HIGHER AND THE FUEL ECONOMY GOT VERY BAD. CONTACTED THE DEALER AND ASKED IF THIS SERVICE CAMPAIGN CAN BE REVERSED AND THEIR ANSWER WAS "NO" I WILL

BE TAKING THE CAR BACK TO THEM HAVE THEM CHECK IT AND ALSO
CONTACTED NISSAN CORP AND OPENED A CASE. I HOPE THEY FIX THIS
PROBLEM AS SOON AS POSSIBLE

**2017 Nissan Rogue**

**NHTSA ID:110884001 Incident Date April 9, 2018:** 2017-NISSAN ROGUE SPORT;
DRIVING ON HWY 41, THE ROGUE LOSES POWER/POWER FAILURE AND
ALMOST COMES TO A COMPLETE STOP. THE ROGUE THEN COMES BACK UP
AND CONTINUES UP HWY 41. THE REAR STOP LIGHTS DID NOT COME ON WHEN
THE POWER WENT DOWN. I WAS ON A 5 LANE HWY AND COULD HAVE BEEN
HIT FROM BEHIND. ALSO, WOULD NOT HAVE BEEN ABLE TO GET OUT OF THE
CAR SINCE I WAS IN THE MIDDLE LANE. IN SPEAKING WITH THE DEALERSHIPS,
THIS APPEARS TO BE A KNOWN ISSUE. I TOOK IT TO AUTONATION NISSAN
THEY KEPT IT FOR TWO DAYS. WHEN I PICKED THE ROGUE UP FROM THEIR
CALL, IT DID NOT AND HAS NOT DRIVEN THE SAME; I EXPLAINED THIS TO THE
TECH. WHEN HE TEST DROVE IT WITH US, HE GUNNED IT GOING UP A HILL, THE
ENGINE JUST RACED, THE CAR DID NOTHING. HE IMMEDIATELY TURNED TO A
DOWNHILL RD AND TOOK THE CAR BACK TOT THE DEALERSHIP. THIS IS A
MAJOR SAFETY ISSUE WHICH I'VE BEEN THROUGH THIS BEFORE WITH NISSAN.
EVERYONE AT THE DEALERSHIPS WANTS TO SAY AND TALK ABOUT
ELECTRICAL ISSUES, FIRST THING THE CHECK. I SPOKE WITH A PERSON AT THE
DEALERSHIP THAT ADVISED THEY DO WHAT NISSAN TELLS THEM TO DO. SO
IT APPEARS THE SAFETY ISSUE CONTINUES, NISSAN HAS THE RESET THE
COMPUTER TO NEW SETTINGS AND THE PROBLEMS AND SAFETY ISSUE IN OUR
OPINION IS NEVER ADDRESSED. I NOW HAVE A 2017 ROGUE SPORT WITH
SAFETY ISSUES AND SOUNDS LIKE AN OLD CAR ON ITS LAST LEG AFTER THE
DEALERSHIP IS DONE WITH IT. ITS TIME NISSAN STEPS UP TO THE PLATE AND
FIXES THE PROBLEM.

**NHTSA ID:11097319 Incident Date May 8, 2018:** TL* THE CONTACT OWNS A 2017
NISSAN ROGUE. WHILE THE VEHICLE WAS IN PARK WITH THE ENGINE
RUNNING, IT ROLLED AWAY WHILE THE CONTACT WAS EXITING. THE
VEHICLE ROLLED OVER THE CONTACT'S FOOT. THE CONTACT SUSTAINED A
BROKEN FOOT THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS NOT
DIAGNOSED OR REPAIRED BY A DEALER OR INDEPENDENT MECHANIC. THE
MANUFACTURER WAS NOTIFIED, BUT OFFERED NO ASSISTANCE. THE FAILURE
MILEAGE WAS APPROXIMATELY 2,000. THE VIN WAS NOT AVAILABLE.

**NHTSA ID Number: 11173854 Incident Date December 28, 2018:** VEHICLE WILL NOT
ACCELERATE CAR HESITATES AND THEN WILL MOVE BUT VERY SLUGGISHLY
. FEELS LIKE IT IS NOT SHIFTING GEARS. LIGHT HAS ILLUMINATED SUSPECT
TRANSMISSION CONCERN. PROBLEM SEEMS TO BE OFF AND ON NOT A STEADY
PROBLEM. IT IS THE THIRD TIME THAT I HAVE HAD TO BRING THE CAR IN FOR
THE SAME PROBLEM

**NHTSA ID Number: 11207223AT Incident Date May 9, 2019:** AT 28,000 MILES, I MY
CVT WENT OUT WITH NO WARNING WHILE I WAS DRIVING ON THE FREEWAY.

**NHTSA ID Number: 11255946 Incident Date September 2, 2019:** AT JUST OVER 60,000
MILES THE VEHICLE BEGAN TO CHUG AT SLOW ACCELERATION. TOOK TO

DEALERSHIP AT 60,900 MILES. SERVICE ADVISED COMPLETE TRANSMISSION FAIL AND COST TO REPAIR $4700 W/TAXES. CONTACT 1-800-NISSAN1 TO SEE IF THEY WOULD HONOR WARRANTY. TOLD IT WOULD BE ESCALATED AND DETERMINATION WOULD BE CONSIDERED WITH HOW MUCH MONEY SPENT AT NISSAN, SERVICE AND PREVIOUS CARS OWNED. THIRD NISSAN OWNED IN 7 YEARS. AWAITING INFORMATION FROM NISSAN REGIONAL SUPERVISOR. THE TRANSMISSION NEEDS REPLACED. THE CVT ISSUE WITH NISSAN CONTINUES.

**2018 Nissan Rogue**

**NHTSA ID Number: 11395112 Incident Date February 1, 2021:** WHEN I WAS DRIVING, IT WAS AS THOUGH IT HAD SLIPPED INTO NEUTRAL. I WAS ACCELERATING WHEN IT WOULDN'T ACCELERATE ANYMORE AND JUST COASTED LIKE IT WAS IN NEUTRAL. ALSO WHEN I ACCELERATE FROM A STOP, IT TOOK A MINUTE TO GO. WHEN IT DID FINALLY GO, IT WAS VERY JERKY AND I WAS ALMOST IN AN ACCIDENT.

**NHTSA ID Number: 11205940 Incident Date April 30, 2019:** TWICE WHILE DRIVING AT 35 MPH THE CAR ATTEMPTED TO SHIFT GEARS BUT INSTEAD STALLED IN BETWEEN GEARS, CAUSING THE CAR TO SLOW DOWN ALMOST TO A STOP. GAS PEDAL WOULD NOT WORK. HAD TO PULL OVER TO KEEP FROM BEING HIT BY TRAFFIC. I READ ABOUT THIS HAPPENING WITH OTHER YEAR ROGUES WITH CVT TRANSMISSION. THERE NEEDS TO BE A RECALL AND REPAIR. DEALER WANTS TO CHARGE $125 FOR A DIAGNOSIS. MY CAR HAS LESS THAN 40K MILES. I HAVE OWNED IT FOR 2 MONTHS.

**NHTSA ID Number: 11161838 Incident Date December 16, 2018:** CVT. RPMS RISING AND FALLING WITHOUT DRIVER INPUT, WITHOUT ANY REASON. THIS IS A MAJOR HAZARD! CAR FAILS TO RESPOND TO GAS PEDAL, CAUSING SERIOUS HAZARDOUS ISSUES ENTERING TRAFFIC. CAR LOSES POWER ON HIGHWAY. THIS IS NOT SAFE!

**NHTSA ID Number: 11299173 Incident Date January 1:** 2020TRANSMISSION CONSTANTLY JERKS. IT IS CONSTANTLY FEELING LIKE IT IS FIGHTING ITSELF GOING DOWN THE ROAD. MECHANICS HAVE TEST DRIVEN IT AND CAN'T FEEL IT SOMETIMES OR CAN'T DIAGNOSE THE PROBLEM. BEEN THIS WAY SINCE I PURCHASES THE CAR. I BOUGHT IT WITH 42 MILES ON THE ODOMETER.

**NHTSA ID Number: 11384897 Incident Date October 21, 2020:** VEHICLE TRANSMISSION STUTTERS AND STRUGGLES TO SHIFT IN HIGHER GEARS. OCCASIONALLY KNOCKS. THE TRANSFER CASE WAS FAULTY 3 MONTHS AGO AND BROKE/FELL APART WHILE I WAS DRIVING DOWN THE HIGHWAY. THE VEHICLE ALMOST LOST CONTROL AND THE DEALERSHIP SAID THE TRANSFER ARM HAD SNAPPED. THE TRANSMISSION STILL MAKES THE SAME HEAVY KNOCKING AND OCCASIONALLY 'SLIPS' AS THE CVT TRANSMISSION HESITATES TO SHIFT. THE VEHICLE HAS VERY SLOW ACCELERATION BECAUSE OF THIS AND EVEN WHEN ACCELERATING AT A SLOW SPEED LIKE

FROM A STOP SIGN THE TIRES WILL JUMP AS IF THE AXLES ARE MOVING FASTER OR SLOWER THAN THE TRANSMISSION IS FIRING.

**2019 and 2020 Nissan Rogue**

**NHTSA ID Number: 11456082 Incident Date March 5, 2022:** WHILE I WAS ON THE FREEWAY THE 2019 NISSAN ROGUE BEGAN TO STALL AND THE VEHICLE LOST SPEED I TRY TO GET OFF THE FREEWAY ALMOST CRASHED INTO ON GOING FREEWAY TRAFFIC AND IT STOPPED MOVING I PUT THE CAR IN PARK AND I COULD NOT MOVE THE GEARS IT WAS LIKE THEY WERE STUCK.NO WARNING LIGHTS CAME ON.I GOT THE VEHICLE TOWED HOME, THEN MONDAY MORNING I GOT IT TOWED TO THE DEALER THE SERVICE REP TOLD ME IT WOULDNT MOVE OR ANYTHING IT NEEDED TO SEE A TRANSMISSION SPECIALIST, I BROUGHT THIS CAR CERTIFIED USED,WORST CAR EVER.

**NHTSA ID Number: 11316869 Incident Date June 19, 2019:** MY CAR'S TRANSMISSION ON MY 2019 NISSAN ROGUE SV AWD HAS BEEN SLIPPING FROM THE MOMENT I RECEIVED IT IN LATE MAY, 2019. ON 6/19/2019, I BROUGHT MY CAR TO THE DEALERSHIP TO REPORT THE PROBLEM. SINCE THEN I'VE BROUGHT IN MY CAR FOR REPAIRS ON 10/15/19, 10/18/19, 1/30/20, 2/15/20, 2/20/20, AND 3/7/20. TO NO AVAIL BECAUSE I'VE BEEN REPEATEDLY TOLD THAT THE "CODES" ARE NORMAL. ON 1/30/20, THE TRANSMISSION CONTROL BOX WAS REPLACED BUT MY CAR CONTINUES TO HAVE TROUBLE ACCELERATING, SPECIFICALLY IT REVS HIGH, BUT DOES NOT RESPOND/ACCELERATE AS EXPECTED. THIS SITUATION CONTINUES TO ENDANGER ME AND OTHERS ON THE ROAD. TO DATE, MY CAR ONLY HAS 8K MILES.

**NHTSA ID Number: 11389288 Incident Date March 5, 2022:** WHEN DRIVING THE VEHICLE LACKS SPEED, JERKS AND DOESN'T HAVE GOOD PICK UP. YOU CAN BE IN MOTION AND IT JERKS, THE TRANSMISSION MAY BE BAD.

**NHTSA ID Number: 11415970 Incident Date May 5, 2021:** I HAVE EXPERIENCED SUDDEN ACCELERATION, AND SUDDEN STALLING ON THE HIGHWAY, COBB PKWY, AND AT A ZAXBY'S RESTAURANT WHEN I WAS DRIVING MY CAR ON FOUR OR MORE OCCASIONS. I ALMOST HIT A CAR LAST WEEK WHEN MY CAR SUDDENLY ACCELERATED. I STEERED MY CAR TO THE RIGHT NEXT TO A CURB TO AVOID A COLLISION. I ALMOST GOT HIT BY A CAR ON COBB PKWY. WHEN MY CAR SUDDENLY STOPPED ON ME WHILE I WAS DRIVING. I HAD MY TWO AUTISTIC DAUGHTERS IN THE CAR EACH TIME THESE EVENTS OCCURRED. WE WERE VERY SCARED EACH TIME THIS HAPPENED. THIS HAS HAPPENED TO MANY OTHER PEOPLE WHO OWN NISSAN ROGUES AND PATHFINDERS. I THINK A RECALL SHOULD BE ISSUED ON THESE CARS BEFORE SOMEONE DIES. PRAYERFULLY, NO ONE HAS DIED FROM THESE ISSUES.

**NHTSA ID Number: 11312179 Incident Date February 28, 2020:** VEHICLE HESITATES OR JERKS DURING LOW SPEED

**NHTSA ID Number: 11386613 Incident Date November 1, 2020:** TL* THE CONTACT OWNS A 2020 NISSAN ROGUE. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 35 MPH, THERE WAS A LOUD BUZZING SOUND WITH A FLASHING LIGHT COMING FROM THE TRANSMISSION SHIFTER. THE CONTACT WAS MOMENTARILY UNABLE TO CONTROL THE VEHICLE. THE CONTACT

INDICATED THAT THE STEERING WHEEL WOULD NOT TURN AND THE BRAKES WOULD NOT OPERATE AS DESIGNED. THE VEHICLE SEEMED TO BE STALLING BEFORE SUDDENLY DRIVING AS NORMAL. THE FAILURE OCCURRED ON TWO SEPARATE OCCASIONS. THE VEHICLE WAS TAKEN TO MIDDLETOWN NISSAN LOCATED AT 1153 NEWFIELD ST, MIDDLETOWN, CT 06457 WHO WAS UNABLE TO DUPLICATE THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 2,300.

47.    Although Defendants were aware of the widespread nature of the CVT Defect in the Class Vehicles, and the grave safety risk posed by it, Defendants took no steps to notify customers of the CVT Defect or to provide them with any relief.

48.    Customers have reported the CVT Defect in the Class Vehicles to Defendants directly and through its dealers.  As a result of these reports and its own internal testing, among other things, Defendants were fully aware of the CVT Defect contained in the Class Vehicles throughout the Class Period.  Nevertheless, Defendants actively concealed the existence and nature of the CVT Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter.  Specifically, Defendants:

a.    Failed to disclose and/or actively concealed, at and after the time of purchase or repair, any and all known material defects or material nonconformities of the Class Vehicles, including the CVT Defect;

b.    Failed to disclose and/or actively concealed, at and after the time of purchase or repair, that the Class Vehicles and their CVTs were not in good working order, were defective, and were not fit for their intended purpose; and

c.    Failed to disclose and/or actively concealed, at and after the time of purchase or repair, the fact that the Class Vehicles and their CVTs were defective, despite the fact that Defendants learned of such defects as early as 2013, if not before.

49.    Defendants have deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the CVT Defect contained in the Class Vehicles.

50. Defendants have not recalled the Class Vehicles to repair the CVT Defect, have not offered to their customers a suitable repair or replacement of parts related to the CVT Defect free of charge, and have not offered to reimburse Class Vehicle owners and leaseholders who incurred costs for repairs related to the CVT Defect.

51. Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

52. As a result of the CVT Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles. Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's CVT is not defective and will not place vehicle occupants at an increased risk of an accident. Plaintiffs and Class Members further expect and assume that Defendants will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose any such defect to its customers prior to selling or leasing the vehicle, or offer a suitable repair. They do not expect that Defendants would fail to disclose the CVT Defect to them, and continually deny the defect.

## VI. TOLLING OF THE STATUTE OF LIMITATIONS

53. Plaintiffs and the other Class Members were not reasonably able to discover the CVT Defect, despite their exercise of due diligence.

54. Despite their due diligence, Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their continuously variable transmission was concealed from them.

55. In addition, even after Class Members contacted Nissan and/or its authorized agents for vehicle repairs concerning the defective nature of the Class Vehicles and their continuously variable transmissions, they were routinely told by Nissan and/or through their authorized agents for vehicle repairs that the Class Vehicles are not defective.

56. Hence, any applicable statute of limitation, if any, has been tolled by Nissan's knowledge, active concealment, and denial of the facts alleged herein. Nissan is further

estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their continuously variable transmissions.

## VII.    CLASS ACTION ALLEGATIONS

57.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes and Sub-Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

58.    The Classes and Sub-Classes are defined as:

**Nationwide Class:** All persons or entities who purchased or leased any 2019-2020 Nissan Rogue vehicle in the United States.

**Massachusetts Sub-Class:**  All members of the Nationwide Class who purchased or leased any 2019-2020 Nissan Rogue vehicle in the State of Massachusetts.

**Maryland Sub-Class:**  All members of the Nationwide Class who purchased or leased any 2019-2020 Nissan Rogue vehicle in the State of Maryland.

**Tennessee Sub-Class:**  All members of the Nationwide Class who purchased or leased any 2010-2020 Nissan Rogue vehicle in the State of Tennessee.

**North Carolina Sub-Class:**  All members of the Nationwide Class who purchased or leased any 2019-2020 Nissan Rogue vehicle in the State of North Carolina.

59.    Excluded from the Classes and Sub-Classes are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class definitions, and to add further subclasses, if discovery and further investigation reveal that the Class and subclasses should be expanded or otherwise modified.

60.    **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single

action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from, *inter alia*, information and records in Defendants' possession, custody, or control.

61. **Typicality:** The claims of the representative Plaintiffs are typical of the claims of the Classes and Sub-Classes in that the representative Plaintiffs, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendants which is subject to the CVT Defect. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that he has incurred or will incur the cost of repairing or replacing his malfunctioning continuously variable transmission and related parts as a result of the CVT Defect. Further, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

62. **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Classes and Sub-Classes that predominate over any question affecting only individual Class Members. These common legal and factual questions include the following:

    a.    whether the Class Vehicles suffer from the CVT Defect;

    b.    whether the CVT Defect constitutes an unreasonable safety hazard;

    c.    whether Defendants know about the CVT Defect and, if so, how long Defendants have known of the Defect;

    d.    whether the defective nature of the Class Vehicles' CVT constitutes a material fact;

    e.    whether Defendants had and have a duty to disclose the defective nature of the Class Vehicles' CVT to Plaintiffs and the other Class Members;

    f.    whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

    g.    whether Defendants knew or reasonably should have known of the CVT Defect contained in the Class Vehicles before they sold or leased them to Class Members; and,

h.      Whether Defendants are liable for the consumer protection, common law and warranty claims asserted herein.

63.     **Adequate Representation:** Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

64.     **Predominance and Superiority**: Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**(Violation of the Tennessee Consumer Protection Act §§ 47-18-101, _et seq._, ("Tennessee CPA") on behalf of the Nationwide Class and, in the alternative, the Tennessee Sub-Class)**

65.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

66.     Plaintiff Brianna Williams brings this cause of action on behalf of herself and on behalf of the Nationwide Class and, in the alternative, the Tennessee Sub-Class.

67.     Plaintiff Williams is a "natural person" and "consumer" within the meaning of Tenn. Code Ann. § 47-18-103(2).

68. Defendants are "person(s)" within the meaning of Tenn. Code. Ann. § 47-18-103(2).

69. Defendants' conduct described herein affected "trade," or "commerce" or "consumer transactions" within the meaning of Tenn. Code. Ann. § 47-18-103(19).

70. By failing to disclose and concealing the defective nature of the Class Vehicles' continuously variable transmission from Plaintiff Williams and prospective Class Members, Defendants violated the Tennessee Consumer Protection Act by: (1) "Representing that goods or services have … characteristic, [or] … benefits …. that they do not have ….;" (2) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" and (3) "Advertising goods or services with intent not to sell them as advertised." Tenn. Code. Ann. § 47-18-104.

71. Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

72. Defendants knew that the Class Vehicles' continuously variable transmissions suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

73. Defendants were under a duty to Plaintiff Williams and the Class Members to disclose the defective nature of the Class Vehicles' continuously variable transmissions and/or the associated repair costs because:

a. Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' continuously variable transmissions;

b. Plaintiff Williams and the Class Members could not reasonably have been expected to learn or discover that their continuously variable transmissions have a dangerous safety defect until after they purchased the Class Vehicles; and,

c. Defendants knew that Plaintiff Williams and the Class Members could not reasonably have been expected to learn about or discover the CVT Defect.

74. By failing to disclose the CVT Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

75. The facts concealed or not disclosed by Defendants to Plaintiff Williams and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them. Had Plaintiff Williams and other Class Members known that the Class Vehicles' continuously variable transmissions were defective, they would not have purchased the Class Vehicles or would have paid less for them.

76. Plaintiff Williams and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a CVT Defect. That is the reasonable and objective consumer expectation for vehicles and their continuously variable transmissions.

77. As a result of Defendants' misconduct, Plaintiff Williams and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their continuously variable transmissions are defective and require repairs or replacement, and are worth less than they would otherwise be worth in the absence of a defect.

78. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff Williams and the other Class Members have suffered and will continue to suffer actual damages.

79. Accordingly, Plaintiff Williams seeks actual damages, restitution, statutory and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper under Tenn. Code. Ann. § 47-18-109(a), *et seq.*, due to Defendants' failure to rectify or agree to adequately rectify its violations as detailed above.

## SECOND CAUSE OF ACTION
**(Breach of Implied Warranty Tenn. Code. Ann. § 47-2-314 *et seq*., on behalf of the Nationwide Class and, in the alternative, the Tennessee Sub-Class)**

80. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

81. Plaintiff Brianna Williams brings this cause of action on behalf of herself and the Nationwide Class and, in the alternative, the Tennessee Sub-Class.

82.     Defendants are merchants with respect to motor vehicles.

83.     Defendants provided Plaintiff Williams and Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things: (i) a warranty that the Class Vehicles' transmission designed, manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles' transmission would be fit for their intended use while the Class Vehicles were being operated.

84.     Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, as described more fully above,

85.     Defendants were on notice of the CVT Defect as discussed more fully above.

86.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff has been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**(Violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*, on behalf of the Nationwide Class and, in the alternative, the North Carolina Sub-Class)**

87.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

88.     Plaintiff Burns brings this cause of action on behalf of herself and the Nationwide Class and, in the alternative, the North Carolina Sub-Class.

89.     North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat §§ 75.1.1 ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of the" NCUDTPA. N.C. Gen. Stat. §§ 75-16.

90.     As described above, Nissan sold vehicles to class members even though the vehicles are defective and pose a safety hazard. Nissan failed to disclose its knowledge of the CVT Defect and its attendant risks at the point of sale or otherwise.

91.     Nissan's conduct occurred in the course of its trade or business and thus occurred in or affected "commerce" as defined in N.C. Gen. Stat. § 75-1.1(b).

92.     Nissan's deceptive acts and practices were consumer-oriented because they had a broad range impact on consumers at large, affecting all owners and lessees of Class Vehicles.

93.     As a direct and proximate result of Nissan's unlawful methods, acts, and practices, Plaintiff Burns and Class Members lost money or property because they have purchased and leased vehicles that they otherwise would not have, or in the alternative, would have paid less for. Meanwhile, Nissan has sold more Class Vehicles than it otherwise could have and charged inflated prices for the vehicles, unjustly enriching itself thereby.

94.     Nissan's deceptive acts and practices were willful and knowing because, as alleged above, it knew about the CVT Defect for many years before it began selling Class Vehicles and chose not to disclose the problem to consumers.

95.     Despite its knowledge of the CVT Defect, it chose to conceal information about the defect from Ms. Burns and other consumers. This concealment was misleading and unfair in a material respect because the information concealed, if known, would impact the purchasing decision of a reasonable consumer. Had Ms. Burns—or any reasonable consumer—been told that the Class Vehicles contained the CVT Defect, they would not have purchased a Class Vehicle or paid less for it.

96.     Pursuant to N.C. Gen. Stat. § 75-16 and § 75-16.1, Plaintiff Burns and other members of the proposed North Carolina Sub-Class seek appropriate injunctive relief, recovery of actual damages, treble damages, and their reasonable costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

**(Breach of Implied Warranty, Mass. Gen. Laws Ch. 106 § 2-314, *et seq*., on behalf of the Nationwide Class and, in the alternative, the Massachusetts Sub-Class)**

97.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

98.     Plaintiff Munford brings this cause of action on behalf of herself and the Nationwide Class, or in the alternative, on behalf of the proposed Massachusetts Sub-Class.

99.     Class Vehicles are "goods" and Nissan is a "seller" and "merchant" within the meaning of Mass. Gen. Laws Ch. 106, § 2-314.

100.    Plaintiff Munford is the intended user and true consumer of the Class Vehicle that she purchased from an authorized dealership.  She used her vehicle as intended by Nissan and in a manner that was foreseeable.

101.    The implied warranty of merchantability included with the sale of each Class Vehicle means that Nissan warranted that each Class Vehicle: (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

102.    The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise consumers of the existence of the danger prior to experiencing the CVT Defect firsthand.

103.    Nissan's actions have deprived Plaintiff and Class Members of the benefit of their bargain and have caused Class Vehicles to be worth less than what Plaintiff and other Class Members paid.

104.    As a direct and proximate result of Nissan's breach of implied warranty, Class Members received goods whose condition substantially impairs their value. Plaintiff Munford and Class Members have been damaged by the diminished value of their Class Vehicles.

105.    Plaintiff Munford and Class Members are entitled to actual damages, including all incidental and consequential damages, resulting from Nissan's breach of the implied warranty.

## FIFTH CAUSE OF ACTION

**(Violation of the Maryland Consumer Protection Act, Md. Code Com. Law §§ 13-101 *et seq*, on behalf of the Nationwide Class and, in the alternative, the Maryland Sub-Class)**

106.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

107.    Plaintiff Stockley brings this cause of action on behalf of herself and on behalf of the proposed Nationwide Class or, in the alternative, the Maryland Sub-Class.

108.    Nissan is a "person" as that term is defined in Md. Code, Commercial Law section 13-101(H).

109.    Plaintiff Stockley and Class Members are "consumers" as that term is defined in Md. Code, Commercial Law section 13-101(C)(1).

110.    As described above, Nissan sold vehicles to Plaintiff Stockley and Class members even though the vehicles are defective and pose a safety hazard.  Nissan failed to disclose its knowledge of the CVT Defect and its attendant risks at the point of sale or otherwise.

111.    Nissan's deceptive acts and practices were willful and knowing because, as alleged above, it has known about the CVT Defect for many years before it began selling Class Vehicles and chose not to disclose the problem to consumers.

112.    Despite its knowledge of the CVT Defect, Nissan chose to conceal information about the defect from Ms. Stockley and other consumers.  This concealment was misleading and unfair in a material respect because the information concealed, if known, would impact the purchasing decision of a reasonable consumer.  Had Ms. Stockley—or any unsophisticated consumer—been told that the Class Vehicles contained the CVT Defect, they would not have purchased a Class Vehicle or would have paid less for it.

113.    Because Nissan did not disclose the CVT Defect, however, Ms. Stockley has been deprived of the benefit of her bargain and harmed in that she now owns a defective and unsafe vehicle.

## SIXTH CAUSE OF ACTION
### (Breach of Implied Warranties Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* on behalf of the Nationwide Class and, in the alternative, the Tennessee and Massachusetts Sub-Classes)

114.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

115.   Plaintiffs Williams and Munford bring this cause of action on behalf of themselves and on behalf of the Nationwide Class and, in the alternative, the Tennessee and Massachusetts Sub-Classes.

116.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

117.   Defendants are "supplier(s)" and "warrantor(s)" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

118.   The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

119.   Defendant's implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

120.   Defendants breached the implied warranty by virtue of the above-described acts.

121.   Plaintiffs and the other Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so.  Defendants were also on notice of the CVT Defect from, among other sources, the complaints and service requests they received from Class Members and their dealers.

122.   Defendants' breach of the implied warranty deprived Plaintiffs and Class Members of the benefits of their bargains.

123.   As a direct and proximate result of Defendants' breach of the implied and express warranties, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial.  Defendants' conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific

performance, diminution in value, and costs, including statutory attorney fees and/or other relief as appropriate.

### SEVENTH CAUSE OF ACTION
**(Unjust Enrichment behalf of the Nationwide Class and, in the alternative, Tennessee, North Carolina, Maryland, and Massachusetts Sub-Classes)**

124.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

125.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class and, in the alternative, the Tennessee, North Carolina, Maryland, and Massachusetts Sub-Classes.

126.    As described above, Nissan sold vehicles to class members even though the vehicles are defective and pose a safety hazard, and Nissan failed to disclose its knowledge of the CVT Defect and its attendant risks at the point of sale or otherwise.

127.    As a result of its fraudulent acts and omissions related to the CVT Defect, Nissan charged Plaintiffs and Class Members more than it otherwise could have for Class Vehicles, obtaining monies which rightfully belong to Plaintiffs and Class Members.

128.    Nissan appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members, who, without knowledge of the Defect, paid a higher price for their vehicles than those vehicles were worth.

129.    It would be inequitable and unjust for Nissan to retain these wrongfully obtained profits.

130.    Nissan's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

131.    Each Plaintiff and the proposed Classes are entitled to restitution of the profits Nissan unjustly obtained, plus interest.

**(Fraudulent Omission behalf of the Nationwide Class and, in the alternative, Tennessee, North Carolina, Maryland, and Massachusetts Sub-Classes)**

132.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

133.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and, in the alternative, the Tennessee, North Carolina, Maryland, and Massachusetts Sub-Classes.

134.     Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured and were not suitable for their intended use.

135.     Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their CVTs.

136.     Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' CVTs because:

    a.     Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVTs;

    b.     Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their CVTs have a dangerous safety defect until after they purchased or leased the Class Vehicles;

    c.     Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the CVT Defect prior to purchase or lease; and

    d.     Defendants actively concealed the defective nature of the Class Vehicles' CVTs from Plaintiffs and Class Members at the time of sale and thereafter.

137.     The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them.  Had Plaintiffs and Class Members known about the defective nature of the

Class Vehicles' CVTs, they would not have purchased or leased them, or would have paid less for them.

138.   Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' CVTs in order to induce Plaintiffs and Class Members to act thereon.  Plaintiffs and the other Class Members justifiably relied on Defendants' omissions to their detriment.  This detriment is evident from Plaintiffs' and Class Members' purchase or lease of Defendants' defective Class Vehicles.

139.   Defendants continued to conceal the defective nature of the Class Vehicles' transmissions even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

140.   As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

<u>**RELIEF REQUESTED**</u>

141.   Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Defendant, and issue an order providing the following relief:

a.   Certifying the proposed Class and Sub-Classes, designating Plaintiffs as a named representatives of the Classed, and designating the undersigned as Class Counsel;

b.   A declaration that Nissan is financially responsible for notifying all Class Members about the defective nature of the CVT in the Class Vehicles;

c.   An order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners or lessees of the Class Vehicles, and in the said notice offer to replace the defective CVT contained in every Class Vehicle with a non-defective CVT;

d.   An order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners and lessees of the Class Vehicles, of an appropriate warranty extension of the Class Vehicles' CVT and related components.

e.  An order directing Defendants to offer reimbursement to all current and former owners and lessees of the Class Vehicles, for all expenses already incurred as a result of the CVT Defect, including but not limited to repairs, diagnostics, and any other consequential and incidental damages (*e.g.* towing charges, vehicle rentals, etc.).

f.  An order directing Defendants to immediately cease the sale and leasing of the Class Vehicles at authorized Nissan dealerships nationwide without first notifying the purchasers of the CVT Defect, and otherwise immediately cease to engage in the violations of law as set forth above.

g.  Damages and restitution in an amount to be proven at trial.

h.  Any and all remedies provided pursuant to the state consumer protection laws, implied warranty laws, the Magnuson-Moss Warranty Act and under common law fraud and unjust enrichment;

i.  An award to Plaintiffs and the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

j.  That Defendants disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, and/or make full restitution to Plaintiffs and Class Members;

k.  An award of attorneys' fees and costs, as allowed by law;

l.  An award of pre-judgment and post-judgment interest, as allowed by law;

m.  Leave to amend the Complaint to add further subclasses and to conform to the evidence produced at trial; and,

n.  Such other relief as may be appropriate under the circumstances.

## DEMAND FOR A JURY TRIAL

142.  Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

DATED: September 13, 2022            Respectfully submitted,


*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)
Benjamin A. Gastel (BPR 28699)
BRANSTETTER, STRANCH & JENNINGS
PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: 615-254-8801
Fax: 615-255-5419
gerads@bsjfirm.com
beng@bsjfirm.com

**GREENSTONE LAW APC**

*s/ Mark Greenstone*
Mark Greenstone (*pro hac vice to be filed*)
Benjamin Donahue (*pro hac vice to be filed*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
mgreenstone@greenstonelaw.com

*Attorneys for Plaintiff*